FILED
MAR 10 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

United States of America
v.

MALDONADO, LARRY

Defendant(s)

Case No. EP-25-M-951-RFC

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of March 7, 2025 in the county of El Paso in the Western District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C 111 (a)(1) | Misdemeanor Assault of a Federal Officer |

This criminal complaint is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

Oath Telephonically Sworn
At 1:10 PM
Fed.R.Crim.P.4.1(b)(2)(A)

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date: 3/10/2025

City and state: El Paso, TX

_____
Complainant's signature
James St. Louis, FBI Special Agent
Printed name and title

_____
Judge's signature
Robert F. Castaneda, U.S. Magistrate Judge
Printed name and title

## Affidavit

1. I, James St. Louis, am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice and conduct investigations of concerning violations of Federal Criminal Law. I have been an FBI Special Agent since February 2022. Prior to becoming an FBI Special Agent, I was a United States Border Patrol Agent for approximately 11 years with two of those years as a Supervisory Border Patrol Agent. I am assigned to the FBI's El Paso, Texas Field Office, Violent Crimes Squad.

2. The information contained herein is based on my personal knowledge and observations made during this investigation, information conveyed by other law enforcement personnel from, interviews and investigative activity, and the review of records and documents obtained during this investigation.

3. On March 7, 2025, Agents of The United States Border Patrol were assigned to the detention area of the Ysleta Border Patrol Station located within the Western District of Texas. While engaged in the performance of their official duties at the Border Patrol Station a recently arrested individual was brought into detention for processing.

4. LARRY MALDONADO, a United States Citizen was encountered by Border Patrol Ysleta Station roving units at the intersection of Enrique Lane and Independence Drive, El Paso, Texas.

5. Border Patrol Agent A.F. received intelligence from his radio dispatch (call sign 880) of three individuals who just made illegal entry into the United States from Mexico. A.F. responded to the area directly north of the address provided by 880 and encountered two subjects at the intersection of Enrique Ln. and Independence Drive. A.F. advised agents in the area the subjects were walking together and appeared to be walking in a hurry. One of the subject's appeared clean and neat while the second subject appeared to be wet, muddy, dirty, and matched the description of the subject provided. A.F. stopped and exited his vehicle and approached the subjects to conduct an immigration inspection. A.F. identified himself as a United States Border Patrol Agent and asked the subjects where they were from.

6. One of the subjects later identified as MALDONADO, LARRY immediately became hostile and combative and argued that he could not be detained or questioned. The

MALDONADO further stated that he did not have to answer any questions and attempted to walk away stating he could not be detained continuing to be aggressive. A.F. explained to the MALDONADO that he could in fact be detained since they were coming from an area where a subject matching the description of the other subject was seen. A.F. again asked the MALDONADO where he was from and MALDONADO continued being aggressive, arguing, and stated "I speak English." A.F. again asked where he was from and the MALDONADO replied, "from here, I was born in Thomason, I'm a U.S. citizen." A.F. noticed that the second subject was keeping to himself and appeared nervous. A.F. asked the second subject where he was from and the subject initially replied, "from Mexico." At this time, MALDONADO got his phone and began recording the encounter attempting to discourage A.F. from continuing the investigation.

7. A.F. asked MALDONADO to stand by while he continued talking to the second subject to establish his citizenship and legal status. MALDONADO became more aggressive and agitated and began walking away stating that they could not be detained. The second subject followed MALDONADO's direction and now stated that he was from "here and you cannot detain me in the Spanish language" ("soy de aqui y no me puedes detener") as he continued walking away in a quick manner. A.F. returned to his vehicle as he believed that the subjects were attempting to abscond.

8. Agents arrived on scene to assist A.F. The Agents approached MALDONADO to detain if he involved in an illegal alien smuggling scheme. Agents approached both MALDONADO and the other subject later identified as ESPINOZA-JAQUEZ, ANTONIO and instructed them to put their hands in the air as they were being detained. Agents then questioned MALDONADO and ESPINOZA-JAQUEZ as to their citizenship. MALDONADO stated he was a United States citizen. ESPINOZA-JAQUEZ stated he was a Mexican citizen. Agents asked ESPINOZA-JAQUEZ if he had just crossed into the United States illegally. ESPINOZA-JAQUEZ replied that he did. ESPINOZA-JAQUEZ was placed under arrest. After a brief struggle, MALDONADO was placed in handcuffs.

9. MALDONADO requested to go to the hospital for an injury he sustained prior to his encounter with Border Patrol. After MALDONADO was medically cleared by the doctors he transported to the Ysleta Border Patrol Station for further investigation.

10. MALDONADO arrived at the Ysleta Border Patrol Station at approximately 3:30 pm. A.F. attempted to fingerprint MALDONADO when he arrived in detention at the Ysleta Border Patrol Station. MALDONADO resisted being fingerprinted and fought with the A.F. MALDONADO was yelling at the Agents saying, "I am good at remembering faces, I will remember your face and find you later." MALDONADO verbally threatened the Agents the entire time that he was being fingerprinted. MALDONADO kept pulling away and resisting as the Agents attempted to take his fingerprints. During his interview with FBI Agents, MALDONADO admitted to fighting and resisting the Border Patrol Agent that was attempting to take his fingerprints. Agents had already printed and read MALDONADO's NCIC paperwork and felt threaten by what he was saying because they saw that he was capable of committing violence.

11. MALDONADO was placed in cell number one. At the time MALDONADO was placed in the cell, he was not handcuffed. A.F. observed MALDONADO attempting to take apart the metal cot that was inside the cell. A.F. realized MALDONADO was attempting to take one of the legs from the cot to use as a weapon. A.F. called for assistance to stop MALDONADO from talking the leg off the cot. Just as MALDONADO was taking the leg off the metal cot, Agents rushed into the cell and placed handcuffs on MALDONADO and leg shackles. MALDONADO was moved to another cell where he attempted to break the glass with his handcuffs.

12. MALDONADO was Mirandized and interviewed at the Ysleta Border Patrol station by FBI Special Agents. MALDONADO refused to sign the advisement of rights form. MALDONADO stated he did not know who ESPINOZA-JAQUEZ was. He saw ESPINOZA-JAQUEZ in his driveway when he asked him for a glass of water. MALDONADO stated he told ESPINOZA-JAQUEZ the door was locked, and he did not have a key. MALDONADO stated ESPINOZA-JAQUEZ asked him for some directions. MALDONADO told ESPINOZA-JAQUEZ he was walking that way, and he can walk with him. MALDONADO stated they were stopped by Border Patrol. He immediately became angry because Border Patrol was accusing him of doing something that he did not do.

13. MALDONADO stated he was resisting against his fingers being printed because he was being falsely accused. MALDONADO admitted to FBI Agents that he did fight with the Border Patrol Agents while they were attempting to take his fingerprints. He stated he did not hit any of the Agents, but he did resist against them.

14. Based on the facts set forth in this affidavit, there is probable cause to believe that LARRY MALDONADO has committed violations of Title 18, United States Code (U.S.C.), Section 111(a)(1) Misdemeanor Assault of a Federal Officer, within the Western District of Texas.

*[signature]*

Special Agent James St. Louis

Federal Bureau of Investigations

SUBSCRIBED AND SWORN TO BEFORE ME ON March 10, 2025.

_____

ROBERT F. CASTANEDA

UNITED STATES MAGISTRATE JUDGE